Barbour, C.J.
(dissenting). To entitle the plaintiffs to recover in this action, they were bound to prove upon the trial, first, that they purchased the corn for the defendant, under and in pursuance of the powers in that regard conferred upon them by the latter; secondly, that the defendant, upon being duly advised of such purchase, and of the amount of the plaintiffs’ advances or liabilities, refused to take the corn or pay such charges; and thirdly, that the plaintiff thereupon sold the corn in open market, after notice to the defendant that he would do so, for the best price it would bring, or that the price for which it was sold was then the fair marketable value of the corn at the places where it was purchased. \
Sufficient evidence was given upon the trial to warrant a finding by the jury, if credited, that, by the original agreement between the parties, the plaintiffs were to purchase the corn through their agents in Baltimore and Alexandria; that such agents should draw upon the plaintiffs’ house for the amounts of their purchases, and that, upon the presentation of those drafts, or those of the plaintiffs’ firm, to the firm of Marquand & Dim-mock, they should he paid immediately; it being understood “ that tire presentation of the drafts to Marquand & Dimmock would be a sufficient guarantee that the corn was bought, and they would pay the face of the draftsand that the price was limited at first to eighty-five cents, and subsequently, to eighty-six and a half cents, per bushel.
Mo evidence was given for the purpose of proving what the corn actually cost beyond the agreement touching the presentation and payment of drafts, above referred to, and the presentation thereof, unless it was to he found in two letters written by the plaintiffs’ firm to their agents in Baltimore and Alexandria, respectively, certain accounts rendered by such agents to the plaintiff, showing purchases of corn by them for the latter, with their disbursements, and the testimony of those agents as witnesses, to the effect that some corn was purchased by them for the plaintiff, without stating in detail the prices paid therefor. By one of those letters the plaintiffs’ firm directed their agents *638 to purchase two hundred and fifty thousand or three hundred thousand bushels, not at or under eighty-six and a half cents per bushel, which was the highest price limited by the instructions of the defendant, but at eighty-six cents; or, if such agents should be able to secure a desirable lot for a cent more, they were ordered to pay it. The other letter directs the agents to pay eighty-five cents; which price, one of them testified, was afterward extended by the plaintiffs to eighty-seven cents per bushel. The accounts show that more than half of the corn charged for therein was purchased at eighty-seven cents ; being half a cent per bushel in excess of the price at which the plaintiffs’ firm were limited by the defendant.
Considering that those letters or orders of the plaintiffs’ firm did not disclose any agency, on the part of the writers, that the persons to whom they were written were directed to purchase at a price exceeding the extreme limit fixed by the defendant, and that more than half the corn purchased by the plaintiffs’ agents was bought for a price beyond such limit, it seems to me impossible to conclude, as a legitimate deduction from the evidence, that the corn in question was purchased by the plaintiffs, as agents of the defendant, under and in pursuance of the power conferred upon them by the' latter. Hay, more, I am clearly of opinion that the evidence ‘in that regard given upon the trial, was such as would have required the jury to find that the corn in question wa's not purchased by the plaintiffs as agents for the defendant, and under his instructions, if that question had been submitted to them.
• Having arrived at this conclusion, it is unnecessary for me to consider the somewhat singular claim of the plaintiffs’ counsel, that the presentation to the firm of Marquand & Dimmock of the drafts which had been drawn upon the plaintiffs, by their own agents, was, under the agreement between the latter and the defendant, at least, prima facie evidence before the court and jury that com had been purchased for the defendant, in pursuance of such agreement, equal in amount to the drafts, so as to throw the onus of proving the contrary upon the latter. I *639 may say, however, that the sole object of that portion of the contract seems to have been to provide for the prompt payment of the drafts, without delays for settlements of accounts; an arrangement, probably, which was sufficient to render the defendant liable for damages on protest, in case of failure to meet such drafts as should actually be drawn in accordance with the provisions of the agreement, but not enough to charge him, in an action of this character, with the amount of the drafts, as for moneys expended for him under the contract. It is sufficient, however, to say that, even if such' presentation of the drafts could be taken as prima faoie. evidence that corn to that amount had been purchased under that agreement, the presumption arising therefrom was removed by the testimony which showed that more than half the corn represented by such drafts was purchased at a price exceeding the limit fixed by the contract, and, therefore, not under it: The evidence to establish the purchase and expenditure under the agreement was, therefore, wholly insufficient ; and, for that reason, the complaint was properly dismissed.
I am also of opinion that the plaintiffs failed upon the trial to prove such a sale of the corn, or marketable value, as would have enabled the jury to ascertain and determine the amount of damages sustained by the plaintiffs, even if they had succeeded in showing that the corn mentioned in the complaint was purchased under the contract. If such purchase had been made, and the defendant had failed to perform the agreement on his part, the plaintiffs would have had a right to sell the corn at auction, at the places where they had bought and stored it, on due notice to the defendant, and to have charged the latter with the deficiency. Or, at their option, they could, themselves, have kept the corn, upon the refusal of the defendant to receive the same, and upon proving the market value at the places of purchase at the time of such refusal, they would have been entitled to recover the difference between such-market value and the amount properly expended by them in the transaction. But no notice of a contemplated sale was given to the defendant, nor was any legal *640 evidence presented upon the trial tending to show what was the market value of the corn where purchased, eitherwhenthe defendant refused to receive the same or at any time. Not ónly were the sales accounts read by the plaintiffs insufficient, of themselves, to prove the fact that the sales mentioned therein were actually made, but, even if that deficiency had been supplied, the market value would not thereby have been proven. The market value of an article of merchandise is not usually established merely by proving the price for which it has been sold by private negotiation.
The judgment should be affirmed, with costs.